UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTHONY ASBELL,<br><br>              Plaintiff,<br><br>v.<br><br>MR. WEST; AUTOM HAMON; TONYA McMILLAN; PATRICK JONES; CORIZON; and CENTURION,<br><br>              Defendants. | Case No. 1:22-cv-00045-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

       The Clerk of Court conditionally filed Plaintiff's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

REVIEW OF COMPLAINT

**1.     Pleading Standards and Screening Requirement**

       A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly*

"facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

2.     **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution. Plaintiff alleges that he has a bladder disease and suffers from incontinence. *Compl.*, Dkt. 3, at 2, 9.[2] He states that he has asked for appropriate incontinence supplies but that he is consistently forced to go without them. Specifically, Plaintiff has requested supplies from Defendants Hamon, McMillan, and Jones—all of whom appear to be prison medical providers—but that these Defendants "blatantly lie[]" to Plaintiff about the issue having been resolved. *Id*. at 7. Plaintiff claims that he has to live in his own urine and fecal matter, and sometimes has to tape diapers to his skin, with box tape, because they are the wrong

---

[2] Page references are to the electronic page numbers generated by the CM/ECF system.

size. *Id*. at 2–4. He states that he suffers from bloody rashes, infections, dehydration, and psychological trauma as a result of these issues.

In addition to Defendants Hamon, McMillan, and Jones, Plaintiff also names as a Defendant one "Mr. West," whose identity is unknown except that Plaintiff alleges that Mr. West is an "owner" of "Corizon AKA Centurian [sic]." *Id*. at 2. However, Corizon and Centurion are not the same entity, and the Complaint does not disclose the entity with which Mr. West is associated. These two entities are private companies competing for contracts with states to provide medical treatment to inmates.[3]

Plaintiff asserts (1) claims under the federal civil rights statute, 42 U.S.C. § 1983, (2) claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and (3) claims of medical malpractice or negligence under Idaho state law.

### 3. Discussion

#### A. Section 1983 Claims

To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989);

---

[3] The Court takes judicial notice that Corizon was previously the contractual provider of medical services to Idaho inmates and that, on October 1, 2021, Centurion took over the medical-treatment contract with IDOC.

*see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of

a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff asserts his § 1983 claims under the Eighth Amendment, which protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth

Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official [or provider] must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060.

"If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to

an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

i.   <u>Claims Against Individual Defendants</u>

Plaintiff may proceed on his Eighth Amendment claims against Defendants Hamon, McMillan, and Jones. The Complaint's allegations that Plaintiff sought supplies from these Defendants, that they did not provide such supplies, and that they lied to Plaintiff about the supplies give rise to a reasonable inference that these providers knew of a substantial risk of serious harm that could occur if Plaintiff did not receive the supplies, yet deliberately disregarded that risk. Therefore, Plaintiff's § 1983 claims against these three Defendants are plausible.

However, Plaintiff has not stated a plausible claim against Mr. West. Taking as true Plaintiff's allegation that Mr. West is an "owner" of either Corizon or Centurion, the Court finds nothing in the Complaint to support an inference that Mr. West personally participated in Plaintiff's treatment or that he knew of, and failed to prevent, a

subordinate's violations of Plaintiff's right to adequate prison medical care. *See Taylor*, 880 F.2d at 1045. As a result, Plaintiff's claims against Mr. West will be dismissed.

ii. Claims Against Corizon and Centurion

Plaintiff's claims against Corizon and Centurion must also be dismissed as implausible. The only allegation of a policy or custom alleged in the Complaint is that one of these entities—and it is unclear which one—has a policy amounting to, "you will get what you get, and we will not change policy for you or your disease." *Compl.* at 4. This allegation is entirely too vague to reasonably imply an official policy or unofficial custom as required by *Monell*.

**B.     ADA Claims**

Plaintiff also asserts claims under the ADA. In order to proceed with an ADA claim, a plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

By statutory definition, a Title II ADA claim must be brought against the state or state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State

official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."); *compare Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (per curiam) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

Plaintiff's ADA claims are implausible because he has not sued a governmental entity or a governmental official who could be named in their official capacity. Even if Plaintiff had done so, however, the Complaint still does not contain facts that would support a claim under the ADA. Plaintiff states that he is disabled, but he points to no action on the part of any Defendant that constitutes discrimination *on account of* that disability. The ADA is not a remedy for inadequate medical treatment. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Thus, Plaintiff's ADA claims must be dismissed.

### C. State Law Claims

Finally, Plaintiff asserts Idaho state law claims of negligence or medical malpractice. "In a negligence action the plaintiff must establish the following elements: '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage.'" *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)).

Additionally, to succeed on a medical malpractice claim, the plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant medical provider "negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Idaho Code § 6-1012. A plaintiff asserting a medical malpractice claim also must first submit the claim to a prelitigation screening panel in accordance with Idaho Code § 6-1001.

Plaintiff's negligence or medical malpractice claims against Defendants Hamon, McMillan, and Jones are plausible for the same reasons as his § 1983 claims. Therefore, Plaintiff may proceed on those claims provided he complied with the Idaho Tort Claims Act ("ITCA"), Idaho Code §§ 6-901 *et seq.*[4]

## REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff also seeks appointment of counsel. Because Plaintiff is not proceeding in forma pauperis, appointment of pro bono counsel is not appropriate. Plaintiff is encouraged to seek his own counsel on a paid or contingency fee basis.

---

[4] Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." In other words, the supplemental jurisdiction power extends to all state and federal claims which one would ordinarily expect to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Because the allegations in this case involve a "common nucleus of operative fact," *id.*, the Court will exercise its supplemental jurisdiction over Plaintiff's state law claims.

**PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION**

When the Court denied Plaintiff's application to proceed in forma pauperis, it also denied Plaintiff's then-pending motions as moot. These motions all pertained to Plaintiff's request for preliminary injunctive relief.[5] Plaintiff now asks that the Court consider that request anew. *See* Dkt. 11.

**1.    Standards of Law Governing Preliminary Injunctions**

A party may obtain injunctive relief prior to final judgment in certain limited circumstances. *See* Fed. R. Civ. P. 65. In considering a motion for a preliminary injunction, a district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

To be entitled to preliminary injunctive relief, the moving party must establish that (1) the movant will suffer irreparable injury if the relief is denied; (2) the movant will probably prevail on the merits; (3) the balance of potential harm favors the movant; and (4) the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo*

---

[5] Plaintiff filed the following motions: (1) a Motion for Emergency Preliminary Injunction; (2) a Motion to Supplement the Motion for Emergency Preliminary Injunction; and (3) a Motion to Amend-Supplement the Motion for Emergency Injunction. The Court has considered all three documents together as a single request for preliminary injunctive relief.

*Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court need not hold a hearing on a motion for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

Generally, the purpose of preliminary injunctive relief is to preserve the status quo, but only if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions of the parties until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "[B]ecause a preliminary injunction is an extraordinary remedy" and is "never awarded as of right," *Winter*, 555 U.S. at 24, the moving party's "right to relief must be clear and unequivocal," *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

"Issuing a preliminary injunction based only on a *possibility* of irreparable harm" is inappropriate, as the Supreme Court has held that a preliminary injunction may be granted only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (emphasis added). "Speculative injury does not constitute irreparable injury" sufficient to warrant granting preliminary injunctive relief. *Goldie's Bookstore Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Instead, a plaintiff may obtain a preliminary injunction only where the plaintiff can "*demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

There are two types of preliminary injunctions. A *prohibitory* injunction prohibits a party from taking an action and is intended to preserve the status quo. A *mandatory*

injunction requires a party to act, "goes well beyond simply maintaining the status quo," and "is particularly disfavored." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks and alteration omitted). "[M]andatory injunctions are not granted *unless extreme or very serious damage will result*"; they cannot be issued "in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks omitted). A court may not issue a mandatory preliminary injunction unless "the facts and law clearly favor the moving party." *Stanley*, 13 F.3d at 1320.

**2.  Discussion**

Plaintiff's Complaint, liberally construed, appears to state some colorable claims upon which Plaintiff will be permitted to proceed. However, the standards for granting a mandatory preliminary injunction such as Plaintiff seeks are extraordinarily high, and, on the limited record before it, the Court concludes that the *Winter* factors weigh against a preliminary injunction in this case.

The first factor weighs in favor of Plaintiff, as it is clear he will suffer harm if he is not provided with sufficient incontinence supplies. However, the second factor—likelihood of success on the merits—favors Defendants. Given the strict standards for § 1983 liability based on deliberate indifference, Plaintiff has not shown that he is likely to succeed on the merits. Though negligence claims involve a lower burden of proof, Plaintiff simply has not submitted sufficient evidence to show that he is likely to succeed on the merits of those claims, either.

The balance of potential harms weighs against a grant of relief. Though Plaintiff's predicament is unpleasant and may even be painful, he does not appear to be in grave danger of any long-lasting harm. But, the harm to individual medical providers who are ordered to provide particular treatment, which may be contrary to their independent medical judgment, outweighs the harm to Plaintiff.

Finally, the public interest factor is neutral and weighs neither for nor against a grant of preliminary injunctive relief. Though the public has an interest in ensuring that prisoners receive adequate medical treatment, it also has an interest in keeping medical decisions in the hands of medical experts, rather than in the courts.

For these reasons, the Court will deny Plaintiff's request for a preliminary injunction.

**CONCLUSION**

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible—meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[6] Because (1) prisoner filings must be afforded a

---

[6] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

Plaintiff will be responsible for serving a summons and the Complaint upon Defendants by formal service of process or by obtaining signed waivers of service of summons from each Defendant or their counsel. Plaintiff must do so within 90 days. If he does not, his claims against any unserved Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Request for Appointment of Counsel (contained in the Complaint) is DENIED.

2. Plaintiff's Motion to Proceed with Claim and Remove All Moot Status (Dkt. 11) is GRANTED IN PART, to the extent that Plaintiff will be permitted to proceed on some of his claims as set forth above. The Motion is denied as to Plaintiff's request for preliminary injunctive relief.

3. Plaintiff may proceed on his Eighth Amendment and state law negligence or medical malpractice claims against Defendants Hammon, McMillan, and Jones. All other claims against all other Defendants are DISMISSED, and Mr. West, Corizon, and Centurion are TERMINATED as parties to this

        action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[7]

4. Within 90 days after entry of this Order, Plaintiff must obtain a waiver of service from, or effect formal service of process of the Complaint upon, Defendants Hammon, McMillan, and Jones. Plaintiff is advised that service and waiver are governed by Rule 4 of the Federal Rules of Civil Procedure.

5. The Clerk of Court will provide Plaintiff with three copies of the Notice of a Lawsuit and Request to Waive Service of Summons. If Defendants do not waive service, Plaintiff alone is responsible for effecting formal service of process upon them.

6. After Defendants appear, the Court will issue an order governing disclosure and discovery in this case. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

7. Pursuant to General Order 324, this action is hereby returned to the Clerk of

---

[7] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: June 23, 2022

_____
David C. Nye
Chief U.S. District Court Judge